LEE (CASTLE v.). See Case No. 2,506.
LEE v. CHADWICK. See Case No. 2,570.

---

## Case No. 8,185.

LEE v. CHASE.

[1 Hughes, 402.][1]

Circuit Court, E. D. Virginia. July 7, 1874.

TAX SALES—RULE NOT TO RECEIVE TAXES EXCEPT FROM OWNER—TENDER WAIVED.

1. Under the act of June 7th, 1862 [12 Stat. 422], "for the collection of the direct tax in insurrectionary districts," etc., as construed in Bennett v. Hunter, 9 Wall. [76 U. S.] 326, a tender by a relative of the owner of the tax due upon property advertised for sale, is a sufficient tender. And if the tax commissioners have, by an established general rule announced, that they will not, and a uniform practice under it refused, to receive the taxes due unless tendered by the owner in person, even a formal offer to pay by another is unnecessary. It is enough if a relative, friend, or agent of the owner "went to the office of the commissioners to see after the payment of the tax on the property, but made no formal offer to pay because it was in effect waived by the commissioners, they declining to receive any tender unless made by the owner in person."

2. Precedent given of proceedings under the acts of May 9 and June 8, 1872, § 2 (17 Stat. 89, 332), and under supreme court decisions in Bennett v. Hunter, 9 Wall. [76 U. S.] 326, Smith v. Turner, 14 Wall. [81 U. S.] 553, and Tacey v. Irwin, 18 Wall. [85 U. S.] 549.

[This was a proceeding in equity by George Washington Custis Lee against Azro Chase, sole heir of George W. Chase, deceased.]

F. L. Smith, for plaintiff.
W. W. Willoughby, for defendant.

The finding of the court, and the judgment rendered, were as follows, and were based upon the late decision of the United States supreme court in the case of Tacey v. Irwin, 18 Wall. [85 U. S.] 548.

The finding was agreed by counsel.

HUGHES, District Judge. And now at this day, to wit, the 7th day of July, 1874, the issues of fact in this cause having been

---

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

tried and determined by the court without the intervention of a jury, pursuant to a stipulation, in writing, duly signed and filed, the court makes the following finding upon the facts:

Long prior to December, 1867, George W. P. Custis was seized in fee of the tract of land in the declaration mentioned; and by his last will and testament, an office copy of which is herein inserted, did devise as follows, to wit: "In the name of God, Amen. I, George Washington Parke Custis, of Arlington, in the county of Alexandria, and state of Virginia, being sound in body and mind, do make and ordain this instrument of writing as my last will and testament, revoking all other wills and testaments whatever. I give and bequeath to my dearly beloved daughter and only child, Mary Ann Randolph Lee, my Arlington House estate, in the county of Alexandria, and state of Virginia, containing eleven hundred acres, more or less, and my mill on Four Mile Run, in the county of Alexandria, and the lands of mine adjacent to said mill, in the counties of Alexandria and Fairfax, in the state of Virginia, the use and benefit of all just mentioned, during the term of her natural life, together with my horses and carriages, furniture, pictures, and plate, during the term of her natural life. On the death of my daughter, Mary Ann Randolph Lee, all the property left to her during the term of her natural life, I give and bequeath to my eldest grandson, George Washington Custis Lee, to him and his heirs forever, he, my eldest grandson, taking my name and arms. I leave and bequeath to my four granddaughters, Mary, Anna, Agnes, and Mildred Lee, to each ten thousand dollars. I give and bequeath to my second grandson, William Henry Fitzhugh Lee, when he shall be of age, my estate called the White House, in the county of New Kent, and the state of Virginia, containing four thousand acres, more or less, to him and his heirs forever. I give and bequeath to my youngest grandson, Robert Edward Lee, when he is of age, my estate in the county of King William, and state of Virginia, called Romancocke, containing four thousand acres, more or less, to him and his heirs forever. My estate of Smith's Island at the capes of Virginia, and in the county of Northampton, I leave to be sold, to assist in paying my granddaughters' legacies, to be sold in such manner as may be deemed by my executors most expedient. Any and all lands that I may possess in the counties of Stafford, Richmond, and Westmoreland, I leave to be sold to aid in paying my granddaughters' legacies. I give and bequeath my lot in square No. 21, Washington City, to my son-in-law, Lieutenant-Colonel Robert E. Lee, to him and his heirs forever. My daughter, Mary A. R. Lee, has the privilege by this will of dividing my family plate among my grandchildren; but the Mount Vernon alto-

gether, and every article I possess relating to Washington, and that came from Mt. Vernon, is to remain with my daughter at Arlington House, during said daughter's life, and at her death to go to my eldest grandson, George Washington Custis Lee, and to descend from him entire and unchanged to my latest posterity. My estates of the White House, in the county of New Kent, and Romancocke, in the county of King William, both being in the state of Virginia, together with Smith's Island, and the lands I may possess in the counties of Stafford, Richmond, and Westmoreland counties, are charged with the payment of the legacies to my granddaughters. Smith's Island, and the aforesaid lands in Stafford, Richmond, and Westmoreland, only are to be sold; the lands of the White House and Romancocke to be worked, to raise the aforesaid legacies to my four granddaughters. And upon the legacies to my four granddaughters being paid, and my estates that are required to pay the legacies being clear of debt, then I give freedom to my slaves; the said slaves to be emancipated by my executors in such manner as to my executors may seem most expedient and proper; the said emancipation to be accomplished in not exceeding five years from the time of my decease. I do constitute and appoint as my executors, Lieutenant-Colonel Robert Edward Lee, Robert Lee Randolph, of Eastern View, Right Reverend Bishop Meade, and George Washington Peter. This will, written by my own hand, is signed, sealed, and executed the twenty-sixth day of March, eighteen hundred and fifty-five. (Seal) George Washington Parke Custis. Witness: Martha Custis Williams. W. Eugene Webster."    •                        •

The said tract of land was devised to his daughter, Mary Ann Randolph Lee, during the term of her natural life, and on her death was devised to his eldest grandson, G. W. Custis Lee, the plaintiff in this case, and to his heirs forever; the said Mary Ann Randolph Lee departed this life on the 5th of November, 1873; said last will and testament was admitted to probate in the county court of Alexandria, Virginia, on the 7th day of December, 1857 as appears by the copy of certificate of the clerk of said court, as follows: "At a county court held for Alexandria county, on the 7th day of December, 1857, the foregoing paper writing, purporting to be the last will and testament of George Washington Parke Custis, was produced in court for probate by Robert E. Lee, one of the executors named therein, and Cassius F. Lee was sworn as a witness, who deposed that he is well acquainted with the handwriting of George W. P. Custis, and that he verily believes the whole of said paper writing, together with the signature thereto, are in the genuine handwriting of said George W. P. Custis. Robert E. Lee, one of the executors named in the last will

and testament of George W. P. Custis, qualified and gave bond with security according to law, the security having justified. Teste: B. H. Berry, Clerk."

On the 11th day of January, 1864, the said premises in the declaration mentioned were sold by the United States direct tax commissioners for Virginia, appointed under the act of congress approved June 7th, 1862, entitled "An act for the collection of the direct tax in insurrectionary districts within the United States, and for other purposes," and amendments thereto. The said property was sold by said commissioners as land liable to be sold under the provisions of the 7th section of said act, because the direct tax imposed upon said property by the act of August 5th, 1861, imposing a direct tax, had not been paid. The property was purchased at said sale by George W. Chase, since deceased, leaving the defendant his sole heir-at-law, at the price of four thousand one hundred dollars, who received from said commissioners a certificate of sale, in the words and figures following: (The certificate is omitted.)

Before the commencement of this suit, and prior to January 1st, 1874, under and by virtue of said certificate of sale, and as heir-at-law of G. W. Chase, the said defendant entered upon and now holds the said property. The said tax commissioners entered upon the discharge of their duties in the city and county of Alexandria, Va., in the month of June, 1863. On the 14th day of September, 1863, they fixed the amount of the said direct tax chargeable respectively upon the several lots and parcels of ground in said city and county, including the property in controversy in this cause. On the 11th of September, 1863, they caused to be inserted in a newspaper published daily in Alexandria, Va., the following notice: Notice to owners of real estate: "The undersigned commissioners hereby give notice that they will be ready at their office, corner of Washington and Prince streets, Alexandria, on and after the 14th of September next, to receive the direct tax assessed and fixed by them on the lots and tracts of land in the city and county of Alexandria, under and by virtue of an act of congress, entitled 'An act for the collection of direct taxes in insurrectionary districts within the United States, and for other purposes.' Office hours from 8¾ o'clock a. m. to 2¾ p. m. John Hawxhurst, W. J. Boreman, G. F. Watson, Commissioners."

The said commissioners, in performing their duties under the said act of June 7th, 1862, did not, at any time or in any case, make or cause to be made any demand for the payment of the tax, either upon the owner or occupant of the property respectively liable therefor, or upon any person whatever, and they made no effort in any case, of any kind whatever, to collect said tax, before proceeding to a sale of the land.

except the publication of the said notice of September 11th. On the expiration of sixty days from the 14th of September, 1863, the said commissioners treated all of said property in said city and county on which the tax remained unpaid, as forfeited to the United States, and liable to sale under said seventh section of said act of June 7th, 1862, and they proceeded, from time to time, to advertise the same for sale accordingly. Pending the advertisement of property for sale under the said seventh section, said commissioners, pursuant to a general rule adopted by them to that effect, invariably refused, in all cases, to receive the tax upon property so advertised, unless tendered by the owner in his own proper person, and notwithstanding the tender of the tax by an agent, relative, or friend of the owner, the commissioners, nevertheless, treated and sold the property as delinquent. This rule and practice was established and followed by them, pursuant to instructions from some officer of the treasury department. Applications were made to said commissioners by the agents and friends of absent owners to pay the tax upon advertised property and save it from sale; which applications, under the operation of said rule and practice, were uniformly refused by the commissioners. No note, record, or memorandum of such applications was kept or made by the commissioners, though such applications were frequent.

The premises in the declaration mentioned were sold as aforesaid by the commissioners without the knowledge or consent of the said Mary Ann R. Lee or of the said plaintiff, both of whom were absent from Alexandria, and within the Confederate military lines from May, 1861, until May, 1865, continuously, and were not within the said county during that time. The amount of taxes, costs, and penalties due upon the said land at the time of the sale to the United States under the said act was forty-six dollars and ninety-seven cents, which, together with interest, costs, and expenses of sale, has been brought into court and deposited with the clerk of this court for the use of the United States, and the whole amount of which is seventy-six dollars and seventy-five cents.

Wherefore, it is considered by the court that the plaintiff do recover of the defendant the premises in the declaration mentioned, according to the finding of the court, and that he recover also his costs by him about his suit in this behalf expended.

NOTE. The tract of land mentioned in the foregoing case was devised by the following clause of General George Washington's will to Mr. Custis: "Fourth. Actuated by the principle already mentioned, I give and bequeath to George Washington Parke Custis, the grandson of my wife, and my ward, and to his heirs, the tract of land I hold on Four Mile Run, in the vicinity of Alexandria, containing one thousand two hundred acres, more or less, and my entire square, number twenty-one, in the city of Washington." The tract was afterwards called by Mr. Custis, "Washington Forest," but is known locally as the "Custis Mill Property."

[The same plaintiff brought suit against other defendants who had bought at tax sale other property belonging to him known as "The Arlington Estate." The case is reported in full in Cases Nos. 8,191, and 8,192.]